. Mr Justice Story
 

 delivered the opinion of the Court.
 

 This is á writ of error to the circuit court of the district of Georgia., The cause, which is an ejectment, has been twice before this’ court, and the decisions then had, will be found reported in IT Wheat. Rep. 33,0, and 5 Peters’s Rep. 233; to which we may therefore refer, as containing a statement of many of the material'facts.
 

 At the neW trial had in November term 1833, in pursuance of the mandate of this court. The plaintiff, to maintain the issue on his part, gave in evidence a copy of a grant from the state of Georgia to Basil Jones, for- seven thousand three hundred acres, including the lands in controversy, dated the 24th of May 1787, with a plat of survey thereto annexed.- He then offered-a copy of a-power of. attorney from Basil Jones to Thomas Smyth, Juni.or, purporting tobe dated the 6th of August 1793, and to authorize Smyth, among other things, to sell and' convey the. tract of seven thousand three 'hundred acres, so granted, which power purported to be signed and sealed in the
 
 *673
 
 presence, of “Abram Jones, J. P.,. and Thomas Harwood, Jun.and the copy was certified to be a true copy from the records ofsRichmond county, Georgia; and recorded therein, on the 11th day of July 1795.. And to account for the loss of the original power of attorney, of which the copy was offered, and of the use of due diligence and search to. find the same, the . plaintiff read the affidavit of William Patterson, the lessor of. the plaintiff, which in substance stated, that he had riot in hi? possession, power or custody, the original grant; and that he verily believed the original power of attorney and grant have been lost or destroyed; He also read, for the same, purpose,
 

 - the deposition of Andrew Fleming, which stated in substance, the searches made by him amoDg Thomas Smyth’s papers, and the information received . by him, leading to the conclusion, that the same has been lost or destroyed.. Also, the.deposition of -Mrs.Smyth, the widow of Thomas Smyth, for the same purpose. Also, the deposition of Richard H. Wilde, which stated several searches inade by him for the. original power, in the office of the clerk of Richmond county, and in other’places, and an application to the wife of Basil Jones,, and to the son of Thomas Smyth, for the like purpose ; and an advertisement in two Georgia newspapers, for information respecting the same, all of which proved ineffectual. The same witness also stated, that Abram Jones, the supposed subscribing witness, was, by public reputation, long since dead. It was admitted that Abram Jones was, at the time of the supposed execution .of the power, a justice.of the peace.
 

 The plaintiff also read in evidence the deposition of William. Robertson, who stated that he was deputy clerk of the court • of Richmond county in 1794* and clerk in 1795, and continued in office uritil 1808 or 1809; that he was well acquainted with Abram Jones, and his handwriting, during the years .1793, 1794 and 1795, and before and afterwards. That .the record of the power of attorney from B. Jones to -Thomas Smyth, Jun., made by himself? while clerk of the court, is a copymf an original power of attorney, which he believes to have beén genuine, for that the official signature of Abram Jones must have induced him to commit the same to record ; and that the copy of the said power of jatlomey transmitted with the deponent’s depositions (the ■ copy before the court),
 
 *674
 
 hadbeeii compared with the .record of the original made by. . himself in Richmond county, and is a true copy.-'
 

 The plaintiff also gave in-evidence a deed executed by Thomas- Smyth, Jun„ as attorney in fact of Basil-Jones, dated on •the 18th of 'November 1793, conveying, as such attorney, to William Patterson, the lessor of the plaintiff, certain-tracts of • land, and among others, the tract of seven thousand three lmndréd -acres; which deed .contained a recital that Basil Jones, by his certain writing or letter of attorney, dated the 6th of August 1793, did empower and authorise his said attorney in his, Basil Jones, name, to sell and' dispose of the tracts mentioned in the deed; which deed was recorded in the records of Franklin county, on the 25th of July 1795-.
 

 Upon this evidence the plaintiff offered the copy as evidence in the cause. It was objected'to by the defendants, and the. objection was overruled by the court; and the copy was admitted in evidence to the jury. And this ruling of the court constitutes the first ground in the bill of exceptions, upon which the defendants now rely for a reversal of the judgment of the circuit court, -which was in favour of the plaintiff.
 

 In the consideration of the . admissibility of the copy, two ■ questions are involved. -In the first place, whether there was sufficient evidence of the genuineness a'nd due execution of the original powerof attorney. - In the next-place, if its genu-, ineness-and due execution are established, whether the copy was, by the principles of law under all the circumstances, ad- ' missible proof.
 

 In regard to the first question, we are to consider, that the original, instrument (supposing it to be'genuine) is of an ancient'date, having been executed in the year 1793, and recorded in the public records as a genuine instrument in 1795; so ‘-hat at the time of the-trial, it was forty years of age. Abram Jones, one of the subscribing witnesses, was long since dead ; and it does pot appear that Thomas Harwood, the other subscribing witness, was alive, or that'the plaintiff had any means of identifying him or tracing out his residence. The original power did not exist, so that the plaintiff could not, by an inspection of his handwriting,- ascertain who he was, or where lie lived.
 

 After the lapse of thirty years from the time of the execution of' a deed, the witnesses are presumed to be dead ; and this is
 
 *675
 
 •tlife common ground, in such cases, for dispensing with the production of them, without any search for them, or proof of their death, when the original deed is before the court for proof. It is a rule adopted for common convenience, and founded upon the great difficulty of proving the due execution of a deed after an interval of many years. And the rule applies not only to-grants of land, but to all .other deeds, where the instrument comes from the custody, of the proper party claiming under it, or entitled to its custody.- 1 Phillips on Evidence, ch. 8, sect. 2, p, 406, and cases there.cited; 1 Starkie on Evidence, part 2, sect. 143, 144, 145, and cases there cited. If, therefore, the original power-were now produced from the custody of the plaintiff, it would not be necessary to establish its due execution by the production of the subscribing witnesses. It would be sufficient to establish it by other proofs. This view, of the matter disposes of that part of the argument which denies that the proof of the original instrument. can be made without the production of the subscribing wit-, ness, Harwood, or accounting for his non production.
 

 Then what is the'proof of the genuineness and due execution of. the original power of attorney? Mr Robertson swears that he was acquainted with the handwriting of Abram Jones (one of the subscribing witnesses), at the time of its date, as well as before, and afterwards; that he recorded it in .the county records ;• that the record is -a copy of an original power of attorney, which he believed to have been genuine, for that (he official signature of Abram Jones must. have.induced him to commit the same to record. Now, what is to be understood by the “official signature” in the language of the witness ? Clearly, his genuine handwriting, and the nnnexation of his official title, J. P., that, is, Justice of the Peace, establishing that he verifies the instrument, not merely as an individual, but as a public officer. It is impossible that it could be his official signature, unless it was also a genuine, and not forged signature of his name. So that here we have from Mr Rob--ertson, direct proof of his belief of the genuineness of the signature of a subscribing witness, from his knowledge.of his handwriting, his examination of Unoriginal instrument, and his having recorded it upon the faith of such belief. It seems to us perfectly clear, upon the received principles of the
 
 *676
 
 law'of evidence, that this was sufficient prima facie.proof of the genuineness and due execution of the original power, to be left to the'jury for their consideration of .its weight and. effect.
 

 The next question is, whether sufficient ground was laid in the evidence to establish the loss or destruction of t]he original power, so as to let in secondary proof. Of its contents. We think there was, considering the lapse of time since the original transaction, the diligence which had been used, the searches which had been made, and' the other, attendant circumstances stated in the depositions, to fortify1 the presumption Of such loss or destruction. This was the vit/.v of this point taken by this, court' in the former decision, in 5 Peters 233, 242, though it was not then so .directly before us;-and having heard the' new argument addressed to us on the present- occasion, we see no reason for departing from our former opinion.
 

 The remaining question then, is, .whether the copy now. produced was proper secondary proof, entitled bylaw to. be admitted in evidence. The argument is, that it is a copy of a copy, and so not admissible; and that the original record might have been produced in evidence. By the'láws Of Georgia,, act of 17.85, deeds of bargain and sale of lands are ■required to be recorded iri the county where the lands-lie. Prince’s Dig. 112. -Powers-of attorney to convey lands, are not- required by law to be recorded in the same county, though there seems to be a common practice so-to do. ■ The act of 1785 provides, that all bonds, specialties, letters-of áttorney and powers in writing, the execution whereof shall be proved by one or more of the witnesses, thereto, before certain magis- 1 trates of either of the- United States, where the same were executed, and duly certified in the manner stated in the act, shall be sufficient evidence
 
 to
 
 the court and jury of the due execution thereof. Prince’s Dig. 113. The present power was.not recorded in the county of Franklin where the lands lie, but in Richmond county; and therefore, a copy from the record is not strictly admissible in evidence, as it would, have been if powers of attorney were by law to be recorded in the county where the lands lie, and the present power had been so duly recorded. It is certainly a common practice to produce, in the custody, of the clerk, under a subpoena
 
 *677
 
 duces tecum, the original records of deeds duly recorded. But in.point ;of law a copy from such record is admissible in evidence, upon the ground stated in "Lynch v. Clark, 3 Salk. Rep. 154-; that where-an original document of a public nature would be evidence if produced, an immediate sworn copy thereof is admissible in. evidence; for as all. persons have a right to the evidence which documents of a public nature afford, they might otherwise be required to'be exhibited at-different places at the same time.. See Mr Leach’s. note to 11 Mod. Rep. 134; Birt v. Barlow, 1 Doug. Rep. 171; 1. Starkie on Evidence, sec. 36, 37. If, therefore,’ the record itself would be evidence of a recorded deed, a duly attested copy "thereof would ; also be evidence. . The present copy does’ not, however, (as is admitted) .fall within the reach of this rule. But the question-does arise, whether the defendant can-insist upon the production of the re'cord books of the county of Richmond, in court, in this case; as higher and more authentic evidence of the power of attorney not properly recorded there, to the exclusion of any other copy duly established in proof. We think he cannot. It is not required by any rule, of evidence with which we are acquainted.
 

 We admit that the rule, that a copy of a copy is not admissible evidence, is correct in itself, when properly understood and limited to its true sense. The rule properly applies to cases where the copy is taken from a copy, the originál being- still in existence and capable of being compared with it; for then it is a second remove from the original:’ or where it is a copy of a copy of a record, the- record being in existence, by law deemed as high evidence as the original; for then it is also a second remove from the record. But it is quite a different question whether it. applies to cases of secondary evidence where the original is lost,; or the record of it is not in law deemed as high evidence as the original; or, where the copy, of a copy-is the highest proof in existence. On these points we give no opinion, because this is not, in our judgmént, the case of a mere copy of a copy verified as such ; but it is the case of asecond copy-verified as a true’copy of the original. Mr Robertson expressly asserts that the record was a copy of the original power made by himself, and that the present copy is a true, copy which has been compared by himself with the
 
 *678
 
 record. In ‘effect, therefore, he swears that both are true copies of the original power.' In- point of evidence then, the case stands precisely in the same predicament as if the witness had made two copies at the sa'me time of the original, and had then compared one of them with the original, and the other \yith the first- copy, which he had found correct. The mode by which he had arrived,at the result, that the second is a true copy of the original, may be more circuitous thati that by which,he has ascertained the first to be correct; but'that only furnishes matter of observation as to the strength of the proof, ■ and not as to its dignity or degree. In each case his testimony amounts to the same result, as a matter of personal knowledge, that each is a true copy of the original. We are therefore of opinion, that there was no error in the court in admitting the copy in evidence under these circumstances.
 

 In the further progress of the trial, additional evidence was offered; and thereupon the defendants prayed the court to instruct the jury, 1. That if the jury,believed that Basil Jones, the deputy surveyor and grantee under whom the lessor of the plaintiff claimed — by designating the stream marked on the original plat as the Branch-of the South Fork of'the Oconee river, instead of thé South Fork of the Oconee river, and by stating that the land was situate in the county of Franklin, when a" large part of it lay without the county of Franklin, and without the temporary boundary line of the state of Georgia —practised a deception upon the governor of Georgia, and thereby induced him to issue the grant; that such grant is fraudulent and void, and cannot efititle the plaintiff to recover. 2. That a grant of land is an entirety, and-that a grant void in part is void for the whole. 3. That a concealment or misrepresentation of material facts, calculated to deceive the governor issuing the grant, renders the grant null and void in law. The court refused to give either of these instructions; and the question now is, whether all or either of them ought to have been giveni
 

 , The first instruction is couched.in language not wholly unobjectionable- or free from ambiguity. It assumes certain facts to be established in tlie case, without referring them to the decision of the jury, and on them founds the instruction; which is certainly,not a correct practice.' ,It also uses the words
 
 *679
 
 “ practised a deception,” without adding any qualifying words, whether the deception was knowingly and wilfully practised for the purposes of fraud, or whether it was by mistake of law or fact, or by misplaced confidence in the representations of other persons. And it is certainly the duty of a party asking an instruction to use language of such a definite and legal interpret •tation, as may not mislead either-the court or jury in regard to the precise nature of the application...
 

 But waiving this consideration, the instruction asked makes no-distinction between the case of a fraudulent grantee and the case of a bona fide purchaser from such grantee, without notice; a distinction most important in itself, and in many cases decisive in favour of the purchaser, whatever may have been the fraud of the original grantee.
 

 It is unnecessary,'however, to rely on this circumstance; for, stripping the instruction of its technical form, it comes to this, that if any part of the land included in the grant lay within the Indian boundary, and the governor was deceived as to- that fact, the grant is void for the whole land; not only lor that within the Indian boundary, but for all that lying within the limits of the state. This proposition is attempted ' to be maintained by the doctrine, that a grant void in part is . void as to the whole. And certain authorities at the common law have been cited at the bar in support of the doctrine. We have examined those authorities, and are of opinion that they do not apply to cases like the present. There-are doubtless cases -where grants and securities, made contrary to the prohibitions of a statute in part, are, upon the true construction of ‘the intent of the statute, void in toto. But Lord Hobart informs us, that it is very different in cases standing merely upon the common law. For (to usé his quaint but expressive language) “the statute is like a tyrant; where he comes, he makes all void: but the common law is like a nursing father, and makes void only that part where the' fault is, and preserves the rest.” See also Norton v. Simmes, Hob. Rep. 14; Maleverer v. Redshaw, 1 Mod. Rep. 35; Collins v. Blantern,
 
 2
 
 Wilson’s Rep. 351. And, therefore, at the common law, in order to make a grant void in toto for fraud or covin, the fraud, or covin must infect the whole transaction, or be so mixed up in it as not to be capable of a distinct and separate considera
 
 *680
 
 tion. The case of Hyslop v. Clarke, 14 Johns. Rep. 458, was a case of fraud, where both the grantors and grantees and assignees were privy to'a meditated fraud-against creditors, and therefore it'was held void in toto. The case of Butler v. Do-rant, 3 Taunt. Rep.
 
 229,
 
 which is very shortly reported, seems tó have proceeded upon the ground, that the statute avoided the-security in toto. If it did not, it seems questionable in its doctrine.
 

 In the present case, there is no statute of Georgia, which declares all grants of land lying partly within, and partly with- .. out the Indian boundaries, to be void in toto. And the policy of the legislature of Georgia, on this subject, is sufficiently vindicated by holding such grants void as to the part within the Indian boundar}', leaving the grant good as to the. residue; This very- point was,, in fact, decided by this court in Patterson v. Jenks,
 
 2
 
 Peters 216, 235. One question there was, whether the whole grant (a similar grant) was a nullity, because it contains some land not grantable. In answer to the question, Mr Chief Justice Marshall, in delivering the ‘ opinion of the court, said, “ In the nature of the thing, we perceive no reason why the grant should not be good for land which it might. lawfully pass, and void as to that part of the tract, for the grantiug of which the. office had not been opened. It is every day’s practice to make grants for lands, which have, in fact, been granted to others. It has nevér been suggested that the whole grant is void, because a part of the land .was not grantable.”. We are entirely satisfied with this doctrine, as equally founded in law and reason. The land in controversy in the present suit is within the acknowledged boundary of Georgia, and without-' the Indian boundary; and admitting the grant to be void as' to the part within the Indian-.boundary, it is, in our judgment, Valid as to the residue, notwithstanding the supposed deception stated in the instruction : for that deception did not affect with fraud any part of the transaction, except as to the land within the Indian boundary. The instruction, therefore, was rightly refused by the court.
 

 The second instruction may be disposed of in a few words. It contains a proposition absolutely universal in its termsthat a grant of lands is an entirety, and that a grant void in part, is void for the whole. If this proposition were true, then.a grant
 
 *681
 
 of ten thousand acres, which was void for any cause whatéver as a conveyance of-one acre, although it might be for want of . title in the grantor, would be void for the remaining nine.thousand nine hundred and ninety-nine acres. It. is sufficient to say, that the • instruction so ■ generally framed, ought not to have been given. .
 

 .The third instruction admits of a similar answer-. It is universal in its terms; and states, “ that a concealment or misrepresentation of ma terial facts” (not stating whether innocently or designedly and fraudulently made), “ calculated to deceive ' the governor;, issuing the grant” (not stating whether he was . actually deceived or not), renders the grant null and void in law,” as to all persons whatever, not stating whether the party is the original grantee, or a bona fide purchaser under him, without notice; Por the reasons already stated, such an instructions so generally stated, ought not to have beeir given.
 

 Upon the whole, we are all of opinion, that the judgment of the'circúit court ought to be affirmed, with costs.