1 55|
102 127|

No. 80.—THE ADMINISTRATORS OF JAMES M'CLESKEY, plaintiffs in error, *vs*. WASHINGTON LEADBETTER, defendant in error.

1 551|
118 373|

Where cross-interrogatories have relation to the subject matter of the direct examination, and the commission is returned with the cross-interrogatories, or any one of them, unanswered, the whole of the testimony ought to be withheld from the jury.

A party claiming under a grantor, as distributee or legatee, cannot impeach his deed for want of consideration, or because it was intended to defraud creditors. Both the grantor and his privies are estopped from denying it.

A deed which recites a former deed and its loss, is evidence of the first deed, and the grantor and his privies are bound by the recital.

A deed or other instrument in writing, more than thirty years old, need not be proven, but is admitted in evidence as an ancient document, provided its genuineness be satisfactorily established.

This was an action of trover for several slaves ; verdict for the defendant in error, who was the plaintiff below, and motion for a new trial overruled. Tried before Judge Dougherty, in the Superior Court of the county of Hall, at March Term, 1846.

For the facts of the case, the grounds of the motion for a new trial, and the errors assigned in the decision of the court below, the reader is referred to the opinion delivered by the Supreme Court.

JUNIUS HILLYER, JNO. W. H. UNDERWOOD,· and BASIL H. OVERBY, for the plaintiffs in error.

NATHAN L. HUTCHINS, H. and T. R. R. COBB, JAMES P. SIMMONS, and —— PEEPLES, for the defendant in error.

*By the Court*—NISBET, Judge.

· In this action of trover for certain slaves, Amy and her children and grandchildren, the plaintiff introduced in evidence, a bill of sale from Drury Leadbetter, dated in 1790, to one Buckner Harris, conveying certain slaves, and among them Amy, to said Harris.

He farther introduced, in evidence, an instrument in writing, bearing date in 1804, signed by Buckner Harris, and attested by two witnesses, one of whom signed officially, as a magistrate ; which instrument appears, from the record, to have been recorded on the books of Green county Superior Court, but at what time, not disclosed.    This instrument recites, or rather purports to certify, that the maker, Buckner Harris, did, several years before, convey to the plaintiff, Washington Leadbetter, by way of deed of gift, two negroes, to wit, Amy and Melinda, and that the title to said negroes was vested in him, as appeared from the records of the clerk's office of Wilkes county.    After which certificate or recital, the instrument proceeds as follows :

" Now be it known to all persons, that whereas the said deed of conveyance is represented to me as being lost or mislaid, so that the said Washington Leadbetter cannot establish his title to said negroes, I do, by these presents, continue to relinquish to the said Washington, all and·singular such title as may remain in me, reserving the service of said negroes for his mother, during her natural life, .as also to confirm any other agreement they may choose to enter into."

The record shows farther, that the wife of Drury Leadbetter, (he having died shortly after the date of the bill of sale to Buckner Harris,) and who is the mother of the plaintiff, intermarried with James M'Cleskey, the defendant's intestate.    All the negroes mentioned in the bill of sale from Drury Leadbetter to Buckner Harris, were, after the death of the former, sold under execution as his property, except Amy, who fell into the possession, at the sale, of Mrs. James M'Cleskey, then the widow of·Drury Leadbetter.    Amy remained in possession of James M'Cleskey and his wife, until Mrs. M'Cleskey died, when this action was brought against James M'Cleskey for Amy and her descendants, some 8 or 10 in number.    James M'Cleskey dying, his representatives were made parties.

The plaintiff below farther proved the repeated admissions, for a series of years, of James M'Cleskey and his wife, that the property belonged to the plaintiff, and that Mrs. M'Cleskey had only a life estate in it.

The defendants sought to defeat the plaintiff's title, by showing that the bill of sale from Drury Leadbetter to Buckner Harris was void ; because given without consideration, and to defraud creditors, and because possession in Harris did not accompany it.    The defendants·

also objected to the admission of the writing from Buckner Harris to Washington Leadbetter, because, as he alleged, it was no deed, nor the confirmation of one, and required its execution to be duly proven.

The interrogatories of one Williamson Leadbetter were read by the defendants, to prove that the bill of sale made by Drury Leadbetter to Buckner Harris was fraudulent, and the interrogatories of one Strickland were tendered by the plaintiff to impeach the credibility of Williamson Leadbetter. In the direct examination of Strickland, he was asked to relate what he had heard Williamson Leadbetter say, about making fifty dollars for swearing in the case for M'Cleskey. To which question Strickland answered, that he heard Williamson Leadbetter say, whilst speaking of his testimony in this suit, that fifty dollars was better than nothing.

Upon the cross-examination, the witness was asked, " From whom did he (Williamson Leadbetter) say he was to receive fifty dollars, or any other sum, for the testimony ?" Which last cross-interrogatory was not answered, and the admission of the whole of Strickland's evidence was excepted to on that ground. The court overruled the exception and admitted the interrogatories.

Such are the facts in this case, which appear to us be necessary to a clear understanding of the points made in the assignment.

Upon the trial, the court instructed the jury that the interrogatories of Strickland were admitted, because he did not consider the answers of Strickland on the subject of what Williamson Leadbetter had said about the fifty dollars, as impeaching the credibility of Leadbetter.

Also, that the defendant could not impeach the deed or bill of sale from Drury Leadbetter to Buckner Harris for fraud, or for want of consideration ; that it was binding on Drury Leadbetter, and all claiming under him as distributees or legatees ; that he could not take advantage of his own fraudulent intent ; and that if the jury believed that the defendant held the negroes under him as a distributee or legatee, he could not set up the fraud of said Leadbetter in avoidance of the deed. That the paper purporting to be a bill of sale from Buckner Harris to Washington Leadbetter, vesting a life estate in Mrs. M'Cleskey, was but a declaration of what he before had done ; that such declaration was no legal evidence of his having done the thing ; that such declaration would bind Harris as an admission, but as between other parties, it was not binding as evidence that he had executed a good and valid bill of sale ; that if the latter clause should be considered as a conveyance, the whole instrument must be considered ; and if the first part of it should be considered as a deed or confirmation, it also showed that he had before executed a deed conveying an absolute and unqualified estate to plaintiff, without any reservation of a life estate to his (plaintiff's) mother. That if the deed had been made as recited in the instrument, its loss did not divest the title to plaintiff, and revest it in Harris ; and therefore, in 1804, Harris had no title to convey to any one, much less could he, by the paper in evidence, create or convey a different estate from that created and conveyed in his first deed ; and consequently, the paper under consideration could not operate as a deed of conveyance creating a life estate in Mrs. M'Cleskey, and at her death remainder to the plaintiff.

The learned judge gave other instructions to the jury, which, as they

were not made the ground of error, are not here repeated. Under the charge of the court, the jury found a verdict for the plaintiff. Whereupon, the defendant moved a rule for a new trial, which being refused, he brought his writ, assigning as follows, to wit:

1st. That the court erred in permitting the instrument executed by Buckner Harris to plaintiff, to go as evidence to the jury.

2d. In permitting the interrogatories of Strickland to be read to the jury, when a material cross-interrogatory was not answered.

3d. In charging the jury that the defendants below could not impeach the deed from Drury Leadbetter to Buckner Harris for fraud, or want of consideration, or because Harris never had possession of the property mentioned in the deed.

Thus, with wearisome but necessary tediousness, have we arrived at the points in this case, for the judgment of this court.

We shall consider the 2d error first. On principle, we think the interrogatories of Strickland ought to have been rejected, upon the ground that the cross-question was not answered.

It is a power incident to courts of justice, in cases where a witness resides abroad, out of the jurisdiction, and refuses to attend, or is sick and unable to attend, to cause his testimony to be taken, by order, or commission for that purpose. The commission to take the depositions of a witness thus situated, is accompanied usually by interrogatories, filed by the parties *on both sides.—Greenleaf*, 387–8–9, and authorities cited in note on page 388. As, however, difficulties lay in the way in England, of the enforcement of a witness to answer, by courts of common law, the whole matter was regulated by acts of Parliament.—13 *Geo.* 3, and 1 *Wm.* 4.

At common law, and by statute, the right of cross-examination is studiously maintained.—*Tidd Prac.* 809–10–11.

The power of issuing a commission to take depositions, is incident to courts of common law, in this country, as in England ; but the manner in which it is to be exercised and enforced in the States is variously *prescribed* by statute. By act of the General Assembly of the State of Georgia, of February 1799, (*Prin.* 425,) it is enacted, that " where any witness resides out of the State, or out of any county, in which his testimony may be required in any cause, it shall be lawful for either party, on giving at least ten days' notice to the adverse party, or his or their attorney, accompanied with a copy of the interrogatories intended to be exhibited, to obtain a commission from the clerk of the court in which the same may be required, directed to certain commissioners, to examine all and every such witness or witnesses, on such interrogatories as the *parties* may exhibit," &c.

By this act, notice is to be given to the adverse party, with a copy of the interrogatories in chief to be exhibited; obviously with a view to the right of cross-examination.

Farther : by this act it is made the duty of the commissioners to examine the witness on such interrogatories as the *parties* may exhibit. Such examination thus taken may be read on the trial, on the motion of *either* party. The right of cross-examination, and, by all necessary implication, of having the cross-questions answered, is thus secured. If the examination is not taken as the statute directs—that is, among other things, if

the questions of both *parties* are not answered—it shall not be read at the trial. This conclusion, if it needed it, is strengthened by the provision which our laws make for compelling a witness to answer.—*Hotchkiss*, 584-5.

It is scarcely necessary to remark that these statutes do not repeal the rules of law which regulate the admission of evidence. For example, they do not repeal the common law, as to what is the manner or extent of the cross-examination. Aside from our own statutes, the general rule at law is, that no evidence shall be admitted, but what is or might be under the examination of both parties.—*Greenleaf*, 620, sec. 554 ; 1 *M. and S.* 4, 6 ; *McCl. and Y.* 160 ; 3 *Summ.* 98, 104-5 ; 1 *Starkie*, 270-1.

This rule does not mean that the party suing out the commission shall be deprived of the benefits of his witness's testimony, by failure of the other party to exercise the privilege of cross-examination, or by the dereliction of the commissioners, or the contumacy of the witness ; but it does mean that a party, seeking the privilege of cross-examination, shall not be forced to trial without it. It certainly does mean that interrogatories ought not to be read, where cross-questions are filed and unanswered, provided they are such as, by law, ought to be answered, until the processes of the court are exhausted to compel the witness to answer.— *Greenleaf*, 621 ; 2 *M. and Rob.* 207.

I have been thus particular in planting the power of cross-examination upon a foundation, laid in authority, because of the sacred character of the right. The power of cross-examination is the most efficacious test which the law has devised for the discovery of truth. Without it *viva voce* examinations, and more particularly examinations by commission, would be very unsafe : the ingenious witness, or still more ingenious examiner in chief, might easily evade the truth, and at the same time avoid the pains of perjury. The right to be confronted with the witness, and to sift the truth out of the mingled mass of ignorance, prejudice, passion, and interest, in which it is often hid, is among the very strongest bulwarks of justice. By means of it " the situation of the witness with respect to the parties, and to the subject of litigation; his interest, his motives ; his inclinations and prejudices ; his means of obtaining a correct and certain knowledge of the facts to which he bears testimony ; the manner in which he has used those means ; his powers of discernment, memory and description ; are all fully investigated and ascertained, and submitted to the consideration of the jury."—*Greenleaf*, sect. 446.

Let us inquire, now, whether the case before us was such a one as, according to the law of evidence, required the withholding the interrogatories from the jury.

It will be remembered that the defendant in the court below had examined a witness, Williamson Leadbetter by name, to prove that the deed from Drury Leadbetter to Buckner Harris was void. The plaintiff sued out a commission to examine Strickland, and, among other things, for the purpose of impeaching the credibility of Williamson Leadbetter. To do this, one of the questions in chief is the following : " Relate what you have heard him, the said Williamson, say about making fifty dollars, by swearing in the above case for McCloskey, the defendant ?" The cross-question elicited by this question in chief, and which was not answered, is the following : " From whom did he say he was to receive the

fifty dollars, or any other sum, for the testimony?" The answer to the direct question is: " I heard him, Williamson Leadbetter, say, while speaking of his testimony in the above suit, that fifty dollars was better than nothing."

The rule as to what cross-questions may be put is this, to wit : a party has no right to cross-examine any witness, except as to facts and circumstances, connected with the matters stated in his direct examination.— 14 *Peters' Rep.* 448-461.

It is true that a party may call a witness, and if he does not examine him in chief, the opposite party may swear him on his account, and examine him generally. How far the examination of a witness by commissioners, under our statute, makes him a witness generally for both parties, we need not decide, being willing to rest this case on the strict rule as to cross-examination, laid down by Mr. Justice Story, in 14 *Peters*.

The object of the direct question is to prove, by Williamson Leadbetter's own statements, that he had received money to testify in the case, and thus to destroy or weaken his credibility with the jury. The answer is, that witness heard him say, in speaking of his testimony, that fifty dollars was better than nothing. Now, judging of the cross-interrogation, by the direct question and its answer, we believe that it must be held to relate to a *fact* or *circumstance*, connected with the matter stated in the direct examination. The matter stated is, the making of fifty dollars by swearing ; the circumstance or fact connected with it, is the *person* from whom he received it. The connection is plain.

Now, how far the answer of the witness, to the question propounded in the direct examination, did, in fact, impeach the credibility of Williamson Leadbetter, is not our province to determine ; nor was it the province of the court below to determine. It is the right of the jury, and their right exclusively, to pass upon the meaning and effect of the testimony submitted to them. Nor can we or the court below determine how far the answer of the witness to the cross-question, would have modified the meaning and effect of his answer to the direct question. We are convinced that the party had the right to have the circumstances under which Williamson Leadbetter made this statement explained ; and having cross-examined the witness with this view, and the commission having been returned into court with this question unanswered, it was the duty of the court to have withheld the interrogatories from the jury.

But we are unwilling, notwithstanding, to send this cause back upon this ground. This error is assigned on a refusal of the court below to grant a new trial. New trials are within the sound legal discretion of the court. We shall not, except in plain and strong cases, interfere with the exercise of that discretion. Notwithstanding the error (as we believe it to be) of the court, in admitting the testimony, yet we can readily believe that, in this case, the jury might have found as they did, had it been rejected. Admitting the unimpeached truth of everything testified to by Williamson Leadbetter, yet the jury might have found as they did find. The courts will not set aside a verdict, on account of the admission of evidence which ought to have been rejected, provided there be sufficient without it to authorize the finding.—*Tidd*, 907 ; 1 *Taunt*, 12.

We are satisfied that there is no error, in the record, on the third ground of error. We are of opinion, with the court below, that a deed,

void as against third persons, is yet binding *inter partes ;* and that it is also binding upon privies. No one can allege aught against his own deed ; nor can any one allege anything against a deed, who sets up a claim under the grantor. Both the grantor and those who claim under him are estopped from pleading that his act is void, because a fraud on the law. It may be true, that the deed from Drury Leadbetter was a voluntary deed, without consideration, and made expressly to defraud his creditors ; yet it is nevertheless true, that if the defendant did set up a claim to the property in question, as his distributee or legatee, he was estopped from so doing. Whether he did claim in that character or not, was very properly left to the jury.

There are some modifications of the general proposition asserted above: for example, one may attack the deed of a grantor, who claims under him, by *prior* deed. But the general principle, as applicable to the facts of this case, is true.—1 *Starkie on Evidence,* 369, *note ;* 4 *Binney,* 231 ; 1 *Dallas,* 67 ; 3 *Mason,* 378 ; 2 *Rand.* 384 ; *Greenleaf,* 28 ; 9 *Cranch,* 43 ; 11 *Johns.* 97 ; 2 *Term Rep.* 171 ; 2 *Taunt.* 278 ; 2 *B. & A.* 367 ; 2 *Smith's Leading Cases,* 452.

In treating of the first assignment, which, for convenience, we make last in the series, it does not become necessary to give a construction to every part of the instrument made by Buckner Harris to the plaintiff below, Washington Leadbetter. The exception taken is to its admissibility generally ; and in the argument, because its execution was not sufficiently proven. It was rightfully admitted as an admission against Harris, the maker. We also think it was evidence of the fact of a previous deed from him to the plaintiff, the execution *and loss* of which it recites. A deed which recites a prior deed is evidence of the first deed, and the grantor is estopped from denying it.

Although this paper is not a deed, yet the principle applies to this instrument, let its technical character be what it may.

Both this paper and the previous conveyance, to which it refers, are part of the plaintiff's title, and as such, were material to his case. As to what extent, together or singly, they prove a title in him, we are not authorized to say : .of that the jury was the proper judge.

In regard to the rule, that the recital in a deed of the execution of a previous deed is evidence of the fact, and binding upon the party making it, and privies, see *Greenleaf,* 26, 27, sec. 23 ; *Willes,* 9 ; 6 *Peters,* 611 ; 4 *Peters,* 1, 83 ; 1 *Starkie,* 369 ; 6 *Mod.* 44 ; *Salk.* 285 ; 4 *Bing.* 231 ; 2 *Lev.* 108, 109 ; *Gilb. L. Ev.* 100 ; and particularly the case of *Carver* vs. *Jackson,* reported in 4 *Peters,* 1 to 87, where the whole doctrine is discussed with extraordinary ability by Mr. Justice Story.

This paper was properly admitted as an ancient document. The usual proof of execution was not necessary. In the nervous language of Buller, in *Rex* vs. *The Inhabitants of Farringdon,* (2 *T. R.* 471,) " It is an established rule, which holds, in case of every deed, that if it be above thirty years standing, it proves itself."

This document is more than thirty years old. We take the rule upon this subject to be this : " An ancient deed, by which is meant one more than thirty years old, having nothing suspicious about it, is presumed to be genuine without express proof, the witnesses being presumed dead ; and if it is found in the proper custody, and is corroborated by ancient or

modern corresponding enjoyment, or by other equivalent or explanatory proof, it is to be presumed that the deed constituted part of the actual transfer of property therein mentioned."—*Greenleaf*, 173–4, sec. 142–3–4. They are to be considered as parts of the *res gestæ*, from which we infer the whole transaction, *ex uno disces omnes* : or, to use the beautiful and apt illustration of Professor Greenleaf : " The residue of the transaction may be as unerringly inferred from the existence of genuine ancient documents, as the remainder of a statute may be made out from an existing *torso*, or a perfect skeleton from the fossil remains of a part." It is necessary, however, to ascertain the *genuineness* of these ancient documents, for their value depends upon that fact. This may be shown *prima facie*, by proof that the document comes from the *proper custody*, or by otherwise accounting for it. Documents found in a place in which, and under the care of persons with whom, the care of such papers might naturally and reasonably be expected to be found, are in precisely the custody which gives authenticity to them.—*Greenleaf*, 172, sec. 142 ; 2 *Bing. N. C.* 183, 200, 201 ; 2 *Anstr.* 601 ; 3 *Taunt.* 91 ; 5 *Price*, 312 ; 1 *ib.* 225, 232 ; 2 *ib.* 303, 307 ; 4 *Wheat.* 213, 221 ; 9 *Peters*, 663–675 ; 5 *ib.* 319, 344 ; 3 *Johns. Cas.* 283 ; 5 *Cowen*, 221 ; 7 *Wend.* 371 ; 2 *Nott and M'Cord*, 400 ; 2 *ib.* 55 ; 2 *M. and Rob.* 240.

Now, for the custody of this document, there is no place provided by law ; there is for such a paper no legal depository. The person interested in and claiming under it, is the person naturally and reasonably expected to keep it. So far as the record discloses the facts, it came out of Washington Leadbetter ; it was found in his custody ; he exhibited it in evidence, and he is the person who is named in it as the remainder-man. Who else should have it ? or where would one go to find such a paper, but to him, of all the world most interested in it ?

It is farther desirable, that there be proof of some act done in reference to the document offered, as further assurance of its genuineness ; such as early possession and enjoyment, or modern possession and user. And in all cases where unexceptionable evidence of enjoyment, referable to the document, may reasonably be expected to be found, it must be produced.—*Greenleaf*, 173, sec. 143 ; 1 *Phil. Ev.* 277 ; 10 *B. and C.* 17.

In the case before us, the record shows possession in the tenant for life at a very early period, and down to her death, and the assertion of the plaintiff's claim immediately on her death. Also the suing out, by the plaintiff, of a process against the defendant, before the death of the tenant for life, to enjoin him from taking the property out of the jurisdiction of the court. So that this part of the rule seems to have been complied with.

Further evidence of its genuineness is found in the fact of its having been recorded, which, according to some of the authorities, dispenses with proof of possession, or other act of enjoyment referable to the deed.

A very grave question has been made, whether proof of possession is not indispensable ; or whether its absence may be supplied by other satisfactory corroborative evidence—Chancellor Kent, sustained by many authorities, holding the former opinion. For this position, see 3 *Johns. Cas.* 283 ; *Coke Lit.* 6 *b* ; 1 *Roll. R.* 132 ; *Skin.* 239 ; 2 *Mod.* 323 ; 110 *Black. R.* 532 ; 3 *Johns. R.* 292, 298. The latter proposition how-

ever, seems to be sustained by more numerous, if not higher authorities, and is considered as the rule.

It is now agreed, that where proof of possession cannot be had, the deed may be read, if its genuineness is satisfactorily established by other circumstances.—6 *Dow*, 202, *by Lord Eldon ;* 9 *Ves.* 5 ; 2 *C. and P.* 440 ; 4 *Wheat.* 213, 221 ; 3 *Johns. Cas.* 283, 287 ; 5 *Cow.* 221, 225 ; 7 *Cow.* 431 ; 7 *Wend.* 371, 373–4 : also the cases collected in *Cowen and Hill's notes to* 1 *Phil. Ev.* 477.

The principles stated apply to all documents or writings which convey rights of any kind, as well as to deeds and wills.—See 2 *T. R.* 470–71 ; 5 *T. R.* 412, *in note ;* 4 *B. and Ald.* 376 ; 6 *Eng. C. L. Reps.* 452.

Let the judgment of the court below, for these reasons, be affirmed.