ISIDOR ALKUS, Plaintiff, v. ALBERT GOETTMANN, as Executor and Trustee Under the Will of HENRY SCHREIBER, Deceased, Defendant.

*Specific performance — a purchaser at a public sale is excused from completing it, by the existence of a question as to an implied power of sale in an executor.*

A purchaser at a public sale of real estate will not be compelled to take premises of which the title is doubtful, unless all the parties interested in the premises are before the court.

A will contained no specific power of sale, but directed certain payments to be made by an executor, from which directions the executor deemed that a power of sale to the extent of such payments arose by implication in his favor, and after having paid the testator's debts and the specific legacies given by the will the executor, upon the basis of a further direction in said will to " pay " to and to " divide " among certain persons the residue of the estate, assumed to convert the realty into personal property, and to that end sold certain land which had belonged to his testator.

*Held*, that there was sufficient doubt as to the existence in the executor of said power of sale to justify the purchaser in refusing to complete the purchase.

A Submission to the General Term of a controversy between Isidor Alkus, plaintiff, and Albert Goettmann, as executor of and trustee under the will of Henry Schreiber, deceased, defendant, upon an agreed statement of facts, dated and verified October 29, 1890.

*Albert G. McDonald,* for the plaintiff.

*Roscoe H. Channing,* for the defendant.

Bartlett, J. :

I think the plaintiff in this litigation is entitled to prevail. He was a purchaser at a public sale in the city of New York of certain real estate which the defendant assumed to sell as executor and trustee under the will of Henry Schreiber. He paid $1,515 toward the purchase-money, other expenses of the sale amounting to twenty dollars, and $125 for the examination of the title. These amounts he now seeks to recover back on the ground that the will of Henry Schreiber does not confer any power of sale upon his executor.

The will first provides for the payment of $500 to the executor, exclusive of his legal commissions, and then gives and bequeaths to

him, as trustee, all the rest, residue and remainder of the testator's property, real and personal, wheresoever situated, in trust, (1) to pay $500 to Henry Booman; (2) to pay $500 to Charles Armann; and (3) to invest $5,000 for the benefit of Minna Piper and her children, and pay the principal over to the beneficiaries in certain proportions at designated times. The will then continues:

"All the rest, residue and remainder of my estate, of whatsoever nature, I direct to be paid to my brother, August Schreiber, whose present address or whereabouts in the United States is unknown to me; to my sister, Christina Budder, wife of Hermann Budder of Stift, Quernhein, Kreis Harford, West-phalen, Germany; and to the child or children of my deceased sister Minna Wilmsmann, formerly wife of Wilhelm Wilmsmann, of Blarsheim, near Qubbeck, West-phalen, Germany, the same to be divided equally between them or the survivors or survivor of them, the said surviving issue of said Minna Wilmsmann to take the share of their deceased mother."

Then follows the nomination of the defendant as executor and trustee "for the execution of the trust hereinbefore stated."

The testator owned the New York lot of land to which this controversy relates, a piece of real estate in Brooklyn, and upwards of $10,000 in personal property. Before the sale in question here, the Brooklyn land was sold, and out of the proceeds and the personalty, the executor had paid the legacies and satisfied all demands upon the estate, based upon the provisions of the will preceding the residuary clause which has been quoted.

From this statement it will be seen that our determination of this controversy must depend upon the question whether the defendant's power to sell his testator's real estate is so free from doubt as to justify the court in compelling a purchaser to take title from him by a judgment rendered in the absence of the parties who are beneficially interested in the lands devised by the will.

I do not think it is. The will confers no express power of sale upon the executor. If any such power exists it must be implied from the language of the instrument, as applicable to the property and affairs of the testator. The defendant concedes that the will is very inartificially drawn, but invokes the rule that where a testator directs that to be done which necessarily implies that the estate is first to be sold, the executor is vested with power to sell

and execute the requisite deeds of conveyance. He argues that the direction in the residuary clause that the remainder of the estate " be paid" to the persons mentioned therein, " the same to be divided equally between them or the survivors or survivor of them," contemplated a transmutation of all the property into money ; that the testator could hardly have intended to authorize his executor to make an actual partition of the two pieces of real estate which he owned, among the six beneficiaries, five of whom were aliens ; and that the insufficiency of the personalty, without the proceeds of the sale of the Brooklyn lot, to pay the testator's debts and legacies, shows that he must have intended to have the executor sell all his land. On the other hand, in behalf of the plaintiff, it is insisted that no case can be found in which a power of sale has been implied on grounds so slight as exist here ; that the use of the phrase " to be paid" is not of controlling significance, inasmuch as there was personal property to which it could apply ; and that the words " the same to be divided equally between them" import a tenancy in common. (*Jackson* v. *Luquere*, 5 Cow., 221.) Another consideration may be suggested. Even if a power of sale can be implied, so far as was necessary to provide for the payment of the legacies, can it be extended further, so as to authorize the executor to sell for the sole purpose of effecting a division of the residuary estate, after all the legacies have been satisfied ?

It seems to me that we have here presented " a real question and a real doubt" such as ANDREWS, J., spoke of in the case of *Fleming* v. *Burnham* (100 N. Y., 1, 10), as sufficient to prevent the court from passing upon an objection to the title in the absence of the parties in whom the outstanding right is vested. It is easy to see how residuary devisees might well object to the exercise of a power to sell lands which would place the entire proceeds in the hands of an executor, unless it was perfectly clear that the testator meant to clothe him with such authority. The case cited, and the later case of *Abbott* v. *James* (111 N. Y., 673), approve the rule that unless all the interested parties are before the court a purchaser will not be compelled to take a title which depends upon a doubtful question even of law only ; for the adjudication would not be binding upon the absent parties, who could raise the same question in a subsequent proceeding. I think this rule is decisive of the present

controversy, and requires us to render judgment for the plaintiff in the terms of the submission.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment for plaintiff in the terms of the submission.