## HEWLETT *vs.* D. & S. COCK.

A *lease* more than thirty years old may be read in evidence without proof of its execution, although there may be no direct proof of possession accompanying it, if found among the title papers of the estate affected by it, and the facts and circumstances in reference to the property specified in it be such as to afford a reasonable ground of presumption of its genuineness ; *so held* in a case where a lease purporting to bear date in 1722, granting to the *lessee* a right to flow lands for the use of a mill, was found among the title papers of the estate of the *lessor* in 1779, and the owner of mill in 1810 recognized the right to the land overflowed in the person to whom the estate of the lessor had been transmitted.

THIS was an action of ejectment, tried at the Queens circuit, May, 1830, before the Hon. OGDEN EDWARDS, one of the circuit judges. The premises in question are low lands lying on the *west* side of a stream in the town of Oyster-bay, in the county of Queens, called Shew, or Beaver Brook, which are overflowed by the waters of a mill-pond of the defendants, who own a mill, situate on the *east* side of the brook, lower down the stream than the lands of the plaintiff. Nicholas Lang, in 1716, was the owner of the premises, from whom the plaintiff deduced title to himself, and offered in evidence a *lease* from Lang to William Frost and Wright Frost, bearing date 4th October, 1722, of certain premises described as the swamp or low ground overflowed or drowned by the pond

which sustained or supplied the mills of the lessees at the Shew brook, in Oyster-bay ; the lease to continue while Lang should possess or keep the farm, of which the premises were a part, and when he disposed of it, the premises to be surrendered and yielded up ; the lessees binding themselves to pay to Lang *six shillings* as an acknowledgment for every year that they should hold and enjoy the premises. To entitle him to read the lease in evidence without proof of its execution, the plaintiff *proved* by his *grantor* that when he acquired his title to the property conveyed to the plaintiff, and went into possession thereof in 1779, he received the lease in question among the title papers of the estate, and the plaintiff *offered* to shew that the premises in question were held under it. The judge decided that the lease could not be read until the plaintiff gave evidence sufficient to raise the presumption that there had been a possession under it. The plaintiff then proved by a witness who was 64 years old, that as long since as he could remember, one Sarah Frost owned and possessed the farm on the east side of the Shew brook, and also the mill property ; that Isaac Smith, the *grantor* of the defendants, who married the only daughter of Sarah Frost, lived with her, and on her death succeeded to the ownership of the property ; that about 20 years before the trial, Smith told him that he did not own any land on the *west* side of the Shew brook ; that he and Townsend Hewlett, (the father and grantor of the plaintiff,) had settled their difficulties by an arrangement, by which it was agreed that Hewlett should release to him the land covered by the water in his pond on the west side of the brook, and he was to hold the water on the pond at its then height, and have the right to raise it 4½ inches higher if he wished so to do ; and he was to permit Hewlett to run a dam across the brook above his (Smith's) pond, and butt it on his land, on the *east* side of the brook ; and that he should release to Hewlett the low land on the east side of the brook that Hewlet wanted to overflow by his pond, gave him a digging bank on that side, and allow him to remove the road east. This witness further testified, that at the time of the trial, Smith still owned the farm on the *east* side of the brook, but had sold the *mill proper-*

*ty* to the defendants, The plaintiff offered to prove the *tradi-tion* in the neighborhood, that *Sarah Frost*, the mother-in-law of *Smith*, was the wife of a son of one of the *lessees* of *Lang ;* that such son inherited the farm and mill property, and that on his death *Sarah Frost* took possession of the premises in question ; but the judge refused to receive the evidence, and decided that the testimony which had been given was not suf-ficient to establish, *prima facie*, a possession under the lease and that therefore it could not be read in evidence ; and the plaintiff offering no further evidence, the judge directed a *non-suit* to be entered, which was now moved to be set aside.

*H. E. Davies*, for plaintiff,

*C. Griffin*, for defendants.

*By the Court*, NELSON, J. In endeavoring to establish his right to recover, the plaintiff offered in evidence the counter-part of a lease, bearing date the 24th October, 1722, purport-ing to be made by Nicholas Lang, to Wright Frost and Wil-liam Frost, from whom it was alleged the defendants derived title to the farm they occupied adjoining the plaintiff's This lease expired on the death of Lang, which took place about 1731 The effect of it upon the rights of the parties, if in proof, is not now to be examined, as the evidence on the part of the plain-tiff had not closed when it was rejected, and a nonsuit was or-dered. It was 108 years old, and was offered in evidence as an ancient deed, and was excluded on the ground that no evi-dence of possession accompanying it was given. In this de-cision the judge erred.

There is some confusion and contradiction in the cases in England, and in those decided in this court, as to the prelimi-nary proof necessary to authorize an ancient deed to be read in evidence. Possession accompanying the deed is always sufficient, without other proof, but it is not indispensable. In *Jackson* v. *Laroway*, 3 Johns. Cas. 283, the English authorities were examined on this subject and an ancient will was adjudg-ed to have been properly admitted in evidence, although actual

possession had not followed, or accompanied it, that being suf- ficiently explained by the nature of the property in question, and circumstances shewn to raise a presumption of the existence and genuineness of the instrument. The judge who delivered the opinion of the court considered the English cases as plain- ly distinguishing between an ancient deed, supported by pos- session, and a deed supported by other circumstances, and that where possession had not gone along with the deed, the party ought to give some account of it, to entitle it to be read in ev- idence. This case was noticed in *Jackson* v. *Laquere*, 5 Cowen, 221, and the principle decided by it recognized and applied by this court. The same principle is admitted by Lord Eldon, in 6 Dow, 202, speaking of the will of Sir T. Parkyns; and in *Doe* v. *Passingham*, 12 Com. Law R. 209, before Justice Bur- rough, at nisi prius, a will of more than thirty years standing was admitted in evidence, though possession had not accompa- nied it, without proof of execution; and though the case was moved at bar, this decision was not complained of. Chancel- lor Kent dissented from the opinion of the court, in *Jackson* v. *Laroway*, and reiterated his doctrine, in *Jackson* v. *Blanshan*, 3 *Johns. R.* 298. The former case, however, has never been overruled; on the contrary, it has been expressly recognized as law in *Jackson* v. *Laquere*, and has undoubtedly in its favor the weight of English authority. 12 Vin. Abr. Ev. 84. 5 Ancient Deeds, pl. 7. 1 Gilb. Ev. 104. 7 East, 291. Phil. Ev. 348. Bull. N. P. 255. 6 Dow. 202. 12 Com. Law R. 209. 1 Esp. R. 275. 2 Bac. Abr. 648.

Was there, then, such an account given by the plaintiff of the lease in this case as might reasonably be expected under the circumstances, and as affords a presumption of its genu- ineness? It was found among the muniments of the title to the farm, of which the premises in question are a part, 50 years before the trial, by Townsend Hewlett, who received them from the heirs and devisees of William Moyle, who de- rived his title in part directly from Lang, the lessor. Vin. Abr. tit. Evidence, 84. 7 East, 291. Ancient writings, which are proved to have been found among deeds of evidences of land, may be given in evidence, although the execution cannot be

proved; for it is hard to prove ancient things, and finding them in such a place, is a presumption that they were honestly and fairly obtained, and preserved for use, and are free from suspicion of dishonesty. An original lease could not be produced, being an ancient lease, but the grand-son of the lessor produced a counterpart, found among the evidences of his grand-father. This was allowed for evidence. Lev. 25. Lord Kenyon admitted a bond to be read without proof of execution, it being more than 30 years old, and appearing to have been found among the papers of the company, and was in the hand writing of their secretary. *The Governor & Company of Chelsea Water-works* v. *Cowper,* 1 Esp. R. 275.

There are other circumstances in the case which I think tend to confirm the genuineness of the lease. The lease was given by Lang, who owned the land on the west side of the brook, to the Frosts, who were owners of the land and mill on the east side, to allow them to flow the premises in question, by means of their dam, for the benefit of the mill. Now, it appears from the evidence that as far back as the memory of man can go, (between 50 and 60 years in this case) Sarah Frost flowed the land on the west side by means of her dam, precisely according to the terms of this lease, and neither she, nor Smith, who succeeded her, ever set up any claim to the land on the west side thus overflowed. On the contrary, Smith, who succeeded to the possession of Sarah Frost nearly 50 years ago, and continued in the occupation of the mill and farm till about 1814, when he sold to the defendants, admitted he owned no land on the west side of the brook. In the absence of evidence of any other right originally to overflow the land, which did not belong to them, I think it would be more reasonable to presume that it was done in pursuance of this lease, which gave originally the right to them, than that it was done without such license, and in violation of right. When the act may have been authorised and lawful, we are bound to consider it so, until the party interested clearly establishes the contrary; this principle is not only sound in itself, but just to all parties. I do not say that this view affords sufficient presumption of *possession under the lease* from

UTICA,
July, 1831.

Hewlett
v.
Cock.

UTICA,
July, 1831.

Hewlett
v.
Cock.

the time of its date to justify its admission as evidence, on the ground of its being an ancient deed, but that it may be fairly urged as a consideration in favor of the authenticity of the lease, under the other alternative of the rule of evidence. Again; the claim made by T. Hewlett to the land overflowed by virtue of this lease, and the subsequent negotiations, during all which time it does not appear that Smith denied the authenticity of the same, were circumstances in its favor. It is fairly to be presumed Smith had the title deeds to his mill property, and a knowledge of the right, if any, to overflow the premises in question, and that if he had not considered the lease genuine, he would have denied Hewlett's right to the premises, or set up his own. The acts and declarations of Smith, the grantor of the defendants, while in the occupation of the mill, and before he parted with his title, are as binding upon the defendants as if made by themselves. 5 Cowen, 129, and cases there cited.

A new trial must be granted, for the reason that the judge ought to have admitted the lease in evidence, without proof of the execution of the same, on the ground of its being an ancient deed. Its great antiquity, the account given of it, together with the evidence of a corresponding possession, and the other circumstances, were sufficient to authorise its admission.

New trial granted.