## Eve Willson *vs.* Betts.

An instrument under seal, executed in 1784, by which J. C. appointed W. M. his attorney, and authorized him to transact all business in relation to the land granted to the former by Congress or the state of New-York, and to take the same into his possession as his own property, and which contained the following clause: "I do hereby grant, bargain, and sell the said lands to J. M., his heirs and assigns forever," is a conveyance by way of bargain and sale, and is sufficient to transfer the title to a lot in the military tract subsequently patented to J. C. as a revolutionary soldier.

Although a consideration is essential to such a conveyance, it may, when not expressed in the deed, be shewn by extrinsic evidence.

A *feme covert* is barred of her entry upon lands by twenty years' adverse possession, provided her disability ceased more than ten years before the commencement of the suit.

Accordingly, where the adverse possession commenced in 1811, and the plaintiff was then a *feme covert*, but her husband died in 1818, and she brought ejectment in 1834; *held*, that her right of entry was barred.

Willson *v.* Betts.

A *feme covert* is entitled to ten years after her disability has ceased within which to bring her action, however long she may have been under disability.

The limitation of the action of ejectment, to a party entitled to bring a writ of right when the revised statutes took effect, is twenty-five years. One claiming title by descent to lands which were wild and unoccupied when his title accrued, may maintain a writ of right counting on his own seizin. *Semble. Per* Bronson, C. J.

*Held,* that one so circumstanced may maintain such writ, counting on the seizin of his ancestor.

In proving a deed, having a subscribing witness who cannot be found, the handwriting of the witness may be proved; but until it is shown that such proof cannot be made, it is not competent to prove the hand-writing of the grantor.

Where it is shown that upon diligent inquiry nothing can be learned concerning the witness, the hand-writing of the grantor may be proved.

Proof that a deed is more than thirty years old, or that it has existed for any length of time, however great, without other circumstances, is no evidence of its authenticity.

And where a deed was proved to have been in existence for upwards of sixty years, and it was shown to have been in the custody in which it would be expected to be if genuine, but no possession had been taken or other act done under it, and the lands had been held adversely; *held,* that its authenticity as an ancient deed was not established.

The antiquity of a deed, where nothing has been done under it, is a circumstance tending to discredit rather than to authenticate it. *Per* Bronson, C. J.

To authorize the reading of a conveyance not proved, as an ancient deed, it must be shown that possession has been taken, or some unequivocal act done under it, or that its validity has been admitted by parties having an adverse interest.

A witness may testify to the genuineness of the signatures to ancient writings, from a knowledge of the hand-writing of the alleged writers, acquired by an inspection of official papers, remaining in a public office, purporting to be signed by the same persons.

Where a deed of lands, dated in 1784, had endorsed upon it a certificate, dated in the same year, of the proof thereof, by a subscribing witness, before a county judge, which though proved to be genuine, did not authorize the deed to be read or recorded, for want of conformity to the statute; and also a genuine certificate of like date, signed by a county clerk of a county different from that in which the land lay, that it had been recorded in his office; *held,* that such certificates did not tend to establish the genuineness of the deed, and were only material to show that it was in existence at the time they bore date.

The presumption upon which an ancient deed is received in evidence, is repelled by proof that the grantor shortly after its date conveyed the premises to another person.

The circumstance that land claimed under an ancient deed, the actual execution of which is not proved, has been held adversely for a long time after the date of such deed, affords a strong presumption against its authenticity.

Willson v. Betts.

EJECTMENT for an undivided sixth part of 168 acres of land, part of lot No. 37, in the township of Camillus, now Van Buren, Onondaga county; tried before WHITING, C. Judge, at the Onondaga circuit, in August, 1846. Joseph Collins was a soldier in the war of the revolution, and drew the lot in question. A patent issued to him July 8, 1790, which was delivered to William McCready. The plaintiff is the daughter of McCready, and entitled as heir at law to the one sixth part of his estate. He died in 1799. The plaintiff claimed that Collins had conveyed the lot to her father in 1784. The plaintiff produced a filed deed from the clerk's office of Cayuga county, which appeared to have been worn away by time at the corners, so as to have destroyed some of the words and parts of words. When produced the part remaining read a⁰ follows:

" all men by these presents, that I, Joseph Collins
first New York regiment do nominate, constitute and
point William McRady in the district of Schohary and
county of Albany to be my lawful attorney irrevocable
and do empower said William McRady to transact all such
business respecting the land granted and to be given to
me as gratuity by Congress and the state of New York
and to receive and take into his possession as his own
property for himself and his heirs and assigns for
such lands as aforesaid, and the title in his own
his use which may be given for the
ress or the state of New York and which
e were I to be present myself and I
linquish and quit claim all my right tit
and claim and demand of in and to the said
I do hereby grant bargain and sell the said lands to
William McRady his heirs and assigns forever.
In witness whereof I have hereunto set my ha
and seal this twentieth day of February one thousand
seven hundred and eighty-four.
Present James Torrence          Joseph Collins. [SEAL.]
Sam. Ramsay, witness."

On the back of the deed was a certificate signed Abraham Ten Broeck, who described himself as first judge of the inferior court of common pleas for the city and county of Albany, certifying that the deed was proved before him on the 29th day of Ma——, 1784, by James Torrence, who swore to the execution, and that he and Ramsay were subscribing witnesses. The judge did not certify that he knew the witness.

There was a further endorsement on the deed, that it was recorded in the clerk's office of Albany county, the 30th March, (the year was gone,) signed, "for Mat. Vischer, cl. John N. Vischer."

When folded, there was an endorsement on the back of the deed as follows:

"5———37.

Joseph Collins

to

William McRady

Feb'y 20, 1784

C.      9.

Registered April 28, 1795.

C.      3.

N. Y. Town, 5. Lot —"

*Philip King*, a witness for the plaintiff, testified that he was a soldier in the revolutionary war, and belonged to the same company with Joseph Collins; knew Collins well for seventeen months, and saw him write often while in the army; firmly believes the signature to the deed to be in the hand-writing of Collins. Cannot say positively, but believes it to be so. On subsequent cross-examination, the witness said he could never write very well himself; that he had not seen Collins since the close of the war, in 1783; nor had his attention been called to the hand-writing of Collins from that time until the week before the trial, when this deed was shown to him. The defendant objected in due time to proof of the signature of Collins, and insisted that the subscribing witnesses should be called. But the judge said he would hear the testimony, subject to the objection. Exception. The plaintiff then offered

to read the deed in evidence. The defendant objected on the ground that it must be proved by the subscribing witnesses; that it could not be read as an ancient deed, as there was no proof of possession under it; and that it was a power of attorney, and not a deed. The judge overruled the objection, and permitted the plaintiff to read the deed in evidence. Exception.

*Lewis H. Sandford*, a witness for the plaintiff, testified that he did not know of his own knowledge that Abraham Ten Broeck was first judge of Albany county; all he knew about it was from reputation, and from the evidence he found in the Albany county clerk's office. The defendant objected to proof by such evidence. Objection overruled, and exception. The witness continued: by reputation Abraham Ten Broeck was first judge of Albany county, from the revolution to about the year 1800, when he was said to have died. The witness had recently examined the records in the Albany county clerk's office, and those records show that Ten Broeck was such judge, and performed various official acts during that time. The witness' knowledge of the hand-writing of Ten Broeck was derived from the examination of those records; had never seen him write. From the information he acquired by two hours' examination of those records, the witness has a distinct impression in his mind of his writing; and thinks the signature on the deed is in the hand-writing of Ten Broeck. The defendant objected to this evidence. He insisted that it was not competent to prove by parol the contents of the records and papers in the Albany clerk's office; that the records should be produced, as the best evidence; that it was not competent to prove the hand-writing of the judge by comparison of papers in the clerk's office with the signature upon the deed; and that it was not competent for the witness to speak from the information he had obtained from those records. Overruled, and exception.

The witness testified that he had in the same way acquired a knowledge of the hand-writing of John N. Vischer, the deputy clerk; that Vischer was deputy clerk from 1783 to 1785.

The witness had no doubt that the signature to the endorsement of the recording of the deed was in the hand-writing of Vischer. Same objection to this evidence, and exception.

The plaintiff was then allowed to read the deed, and the endorsements in evidence. Exception.

The witness afterwards testified to various inquiries after the subscribing witnesses to the deed, without being able to learn any thing concerning them.

The defendant gave in evidence a deed of the lot from Collins, the soldier, to William Hiscock, dated January 12, 1797, which was duly acknowledged and recorded. Also a deed of the lot from James Dole, who married one of the daughters of McCready, to Levi Carter, dated July 10, 1811, which was duly acknowledged and recorded. Under this last deed the defendant, by sundry mesne conveyances, made title. Carter was the first occupant of the lot. He went into possession in 1811 ; and he, and those claiming under him down to the defendant, have been in possession ever since. The plaintiff was married to William Lake as early as 1794; and Lake died in 1818. About the year 1824 the plaintiff married Andrew Willson, who has since died. This suit was commenced in July, 1834.

The judge charged the jury, in substance, and among other things, that the deed from Collins to McCready, if genuine, was more than a power of attorney, and conveyed the property. The question was, whether the deed was a genuine instrument. It was produced from the filed deeds in the Cayuga county clerk's office, and the endorsement upon it, "registered April 28, 1795," was *prima facie* evidence that it was deposited at that time. If the jury believe that King had a knowledge of Collins' hand-writing, and retains a recollection of it, and if the jury credit him, he proves the signature to be Collins' hand-writing.

He further charged, that there were attendant circumstances to corroborate the deed, which if they occurred at all, must have occurred at or about the time it purports to have been executed. The testimony of Mr. Sandford is not evidence of the execution of the instrument, but proves circumstances

which, with the other evidence, tend to establish its execution, and the jury will give it such effect as they deem it entitled to. The court does not charge that the plaintiff is entitled to read the instrument in evidence as an ancient deed without proof of Collins' signature. It is an old deed, but the proof is not held conclusive. The plaintiff has shown an inquiry for the two subscribing witnesses. The legal presumption is, that those witnesses are not living. The question is on the execution of the deed, and if the jury are satisfied that it is genuine, the plaintiff is entitled to recover.

The defendant then requested the judge to charge that the e ridence of Sandford should not be taken by the jury as any evidence of the execution of the deed ; and that no part of the endorsement of Ten Broeck or Vischer upon the deed, was to be taken as evidence.

The judge thereupon informed the jury that such proof did not of itself make out the execution of the deed, nor were the certificates signed by those officers evidence of its execution. But the testimony if it satisfied the jury as to the hand-writing of those officers, furnished a circumstance—a concomitant act— which the jury were to weigh in deciding upon the question of the execution of the deed.

The judge further charged that the plaintiff was not barred by adverse possession.

The judge declined to charge, that without the testimony of King there was no evidence of the execution of the deed.

The defendant excepted to every part of the charge, and to the refusal to charge as requested.

After the judge had completed his charge and given his opinion upon the foregoing points made by the defendant, and before the jury had retired, the defendant requested the judge to charge, that independent of the testimony of King, there was no sufficient testimony in the cause to entitle the plaintiff to read the deed as an ancient deed. The judge answered, that he did not suppose the question arose ; but if the defendant wanted his opinion on the point, he would say, that in his opinion the deed might be read as an ancient deed on the

circumstances of the case, exclusive of the proof of the signature of Collins. The defendant excepted.

The jury found a verdict for the plaintiff, for an undivided sixth part of the premises. The defendant moves for a new trial on a bill of exceptions.

*J. R. Lawrence & S. Stevens,* for the defendant.

*B. D. Noxon,* for the plaintiff.

*By the Court,* BRONSON, Ch. J. If we assume that there was no difficulty in relation to the proof of the deed from Collins to McCready, I see no ground on which the motion for a new trial can succeed. The instrument is more than a power of attorney: it is also a conveyance by way of bargain and sale. It is true that a consideration is essential to such a conveyance, and that none is expressed in this deed. But extrinsic evidence is admissible to show a consideration, where none is expressed in the deed. (*Jackson* v. *Fish,* 10 *John.* 456 ; *Jackson* v. *Pike,* 9 *Cowen,* 69.) The point that there was no consideration was not made on the trial. Had it been made, it is possible that the plaintiff might have given evidence to supply the defect. This is a bill of exceptions ; and we cannot go beyond the questions made on the trial.

When the adverse possession commenced in 1811, the plaintiff was a *feme covert,* and so continued until the death of her husband, Lake, in 1818. But the seven years of coverture are not to be deducted from the running of the statute. The plaintiff was only entitled to twenty years from the commencement of the adverse holding to bring her action of ejectment, because her disability had ceased more than ten years before the twenty years' limitation was at an end. Twenty years' adverse holding is a bar to the right of entry of a *feme covert,* as well as in other cases, provided the disability was removed at least ten years before the twenty years expired. She is always entitled to ten years after the disability ceases, however long it may continue ; but when she has those ten years, and the whole

period of adverse holding amounts to twenty years, the right of entry is gone. (*Jackson* v. *Johnson*, 5 *Cowen*, 74.) In this case the right of action accrued twenty-three years before the suit was commenced; and sixteen years of that period elapsed after the death of Lake.

But if the plaintiff could have maintained a writ of right at the time the revised statutes took effect, the limitation is then twenty-five years; and that period had not elapsed when the suit was commenced. (*McCormick* v. *Barnum*, 10 *Wend.* 104; *Failing* v. *Schenck*, 3 *Hill*, 344; *Cole* v. *Irvine*, 6 *id.* 634.) It is said that she could not have maintained a writ of right, because she claims by descent from her father, and never was in actual possession of the land—that though seized in law, she never was seized in deed. The case states, that Carter, who entered in 1811, was the first occupant of the land. Before that time it was wild and unoccupied; and the descent took place in 1799. I am inclined to the opinion that the plaintiff might have maintained a writ of right, counting upon her own seizin. But without stopping to consider that question, it is clear that she might have maintained the writ, counting on the seizin of her ancestor. Although her father was never in actual possession, yet as grantee in a deed of bargain and sale, the lands being wild and unoccupied, he had such a seizin as would enable him to maintain a writ of right; (*Green* v. *Liter*, 8 *Cranch*, 229;) and the heir may count upon his seizin. The limitation was therefore twenty-five years; and the action was brought before the right was barred.

The principal question is on the proof of the deed from Collins to McCready. The plaintiff did not propose to read the instrument as an ancient deed; but attempted to show it genuine by one of the usual modes of proving a deed. But there was a great departure from the proper order of proof. Evidence was given of the hand-writing of the grantor, before any account whatever had been given of the subscribing witnesses. In proving deeds the proper course is, first to call the subscribing witness: if he cannot be had, you may then prove his hand-writing, as the next best evidence. When it appears that that cannot

be done, and not before, proof may be given of the hand-writing of the grantor. (*Jackson* v. *Waldron*, 13 *Wend.* 178; *Mc-Pherson* v. *Rathbone*, 11 *id.* 96; *Lessee of Clarke* v. *Courtney*, 5 *Peters*, 319.) The lapse of time would authorize the presumption that the witnesses to this deed were dead; (*Winn* v. *Patterson*, 9 *Peters*, 663;) but it may be doubted whether it would warrant the further presumption that their hand-writing could not be proved. A fact of that kind may be proved many years after the writer is dead. We have in this very case a witness swearing to the hand-writing of the grantor, who had neither seen the man nor his writing in more than sixty years. And the grantor had been dead nearly fifty years.

But although proof of the hand-writing of the grantor was improper at the time it was received, the error was afterwards cured, by showing, that upon diligent inquiry, nothing could be learned concerning the witnesses to the deed. After that evidence was given, the testimony of King might properly be submitted to the jury, in connection with other facts, for whatever it was worth.

But there is still a difficulty in the plaintiff's case. Her counsel on the trial seem not to have settled in their own minds upon what ground the deed should go to the jury. They did not at the first offer it as an ancient deed : nor did the judge in the first instance instruct the jury that the plaintiff was entitled to read the instrument as an ancient deed. But the defendant insisted in different forms upon having that question settled, and the plaintiff's counsel finally replied at the close of the trial, that they had no doubt but that there was enough, without King's testimony, to warrant the reading of the deed in evidence. The judge also, as the last thing which he said in presence of the jury, declared, that in his opinion, the deed might be read as an ancient deed on the circumstances of the case, exclusive of the proof of the signature of Collin. To this opinion the defendant excepted; and if the exception is well founded, I do not see how the verdict can stand. It is true that the judge prefaced his opinion by saying, he did not suppose the question arose : but as the question was in the case,

and the judge gave his opinion upon it, I think we are bound to inquire whether he was right in point of law.   The fact that the opinion came out after the judge had got through with all that he had intended, or had before been requested to say to the jury, cannot alter the case.   Nor is it important that the judge addressed himself to the defendant.   It is enough that he was requested to give his opinion upon this question of law ; and did give it in presence of the jury.   The fact that it was the last thing which was said in presence of the jury before they retired to consider of their verdict, renders it the more probable that it had an important influence upon their finding. Indeed, I think it probable that this is the very hinge on which the verdict turned.   The testimony of King, however honest he may have been in giving it, would not be likely to make a very strong impression upon the minds of intelligent jurors.   He could never write very well himself; and probably was not a good judge of the hand-writing of others.   He had only known Collins for the seventeen months when they were fellow soldiers in the war of the revolution ; and he had neither seen the man, nor his hand-writing for the last sixty-three years.   However firmly he may have believed that the signature to the deed was written by Collins, it is hardly to be supposed that his belief would carry strong conviction of the authenticity of the deed to the minds of others.   But the other evidence in the case, which the judge held sufficient to warrant the reading of the instrument as an ancient deed, was well calculated to make a strong impression upon the minds of jurors; and without proper instructions, would be very likely to have an undue influence upon the verdict.   If the jury believed the hand-writing of Judge Ten Broeck and that of Vischer, the deputy clerk, to be sufficiently established, they would be very likely to regard this as a proved and recorded deed ; although in point of law, it had neither been proved or recorded, as we shall presently see.   But it is enough that the opinion which the judge ex-pressed may have affected the verdict ; and we must inquire whether the opinion was well founded in point of law.

The question then is, whether independently of the testi

mony of King, there was enough in the other facts of the case to warrant the reading of the instrument as an ancient deed. In other words, the inquiry is, whether the circumstances to which the judge alluded would warrant the jury in finding the due execution of the deed. Those circumstances are, first, the depositing of the deed in the county clerk's office, pursuant to the acts of 1794 and 1795, in relation to conveyances of military bounty lands; and second, the certificates of Judge Ten Broeck and the deputy clerk in relation to the proof and recording of the deed. It should be observed at the outset, that the best confirmatory proof of a deed of thirty years' standing, to wit, possession under it, is wanting in this case. Although Dole, who conveyed to Carter, was the son-in-law of McCready, there is no proof that he claimed under McCready. So far as the possession goes, it had been held in hostility to the deed for thirty-five years next preceding the trial; and it had been so held for twenty-three years before the suit was commenced. Then, what was the just value of the facts on which the plaintiff relied to establish the authenticity of the deed?

The deed was produced on the trial by the county clerk, with whom it had been deposited in 1795, pursuant to law. (2 *K. & R.* 262, 265.) It came from the proper custody, or the place where we might expect to find it, assuming it to be genuine. But the fact that the instrument came from the hands of the clerk, proves no more in favor of its authenticity, than would the fact that it had been found among the papers of McCready after his death. The fact of proper custody, whatever that custody may be, can never prove much in favor of the deed; for if it were a forgery, we might expect to find the instrument in the hands, or under the control of those who intended to use it.

But the fact that the deed was deposited with the clerk in 1795, proves that it is in truth more than thirty years old; and lays a proper foundation for resorting to other proofs than such as would be required if the instrument were of a more recent date. Instead of calling the subscribing witnesses, or proving their hand-writing, or the hand-writing of the grantor,

any evidence may be given which fairly tends to establish the authenticity of the deed; as, that possession has gone along with the deed, or that it has been admitted by those whose interest lies in a different direction. But the mere fact that the instrument has existed for more than thirty years, unaided by other proofs, cannot be enough to establish it in a court of justice. In the ordinary affairs of men it is very often assumed without proof, that he whose name has been affixed to a written instrument, placed it there himself. But when the signing becomes a matter of legal controversy, it must be established by proof. And showing that the instrument is thirty years old has no greater tendency to prove it genuine, than would the fact that it had existed for a single day. The mere fact of existence, whether the time be long or short, has no tendency whatever, in a legal point of view, to prove the due execution of the instrument. It may be said in any case that a deed is probably genuine, because it is not probable that any one would forge it; but when the execution of the deed is in question, courts never act upon such presumptions. It has sometimes been loosely said, that when there are no circumstances of suspicion, a deed thirty years old proves itself. But there is no just foundation, either in principle or authority, for such a *dictum*. I need not go over the cases. There is none in this state which has gone so far as *Jackson* v. *Laroway*, (3 *John. Cas.* 283.) And there the court did not profess to go upon the doctrine that the will proved itself, without the aid of other evidence. I may add, that although that case has not been directly overruled, it has been shaken by subsequent decisions. There had been no possession under the will: and in the case of *Jackson* v. *Blanshan*, (3 *John.* 292,) Kent, Ch. J., who delivered the opinion of the court, said, " it is the accompanying possession alone, which establishes the presumption of authenticity in an ancient deed." There was a *dictum* to the same effect by Savage, Ch. J. in *Jackson* v. *Brooks*, (8 *Wend.* 431,) and there are other highly respectable authorities on the same side of the question. But it seems to be now settled, that other facts, besides possession, may be sufficient to raise the presump-

tion that the deed is genuine. (*Jackson* v. *Luquere*, 5 *Cowen*, 221 ; *Hewlett* v. *Cock*, 7 *Wend.* 371.) Other cases touching that question, as well as the whole subject of admitting ancient deeds and writings in evidence, will be found collected in the learned note of Messrs. Cowen & Hill to Phillipps' Evidence, (*p.* 1310, *note* 903.) *Jackson* v. *Luquere* is directly to the point, that mere efflux of time is never a sufficient ground for admitting a deed or will, without further proof. In *Doe* v. *Samples*, (8 *Ad. & Ellis*, 151,) although possession is not expressly mentioned, it had evidently gone along with the deed. The defendant was one of the children of the marriage, and held under the settlement. The only difficulty was, that the deed had not been found in the proper custody ; and that is the only matter which was discussed. I have already said, that the mere fact of antiquity, unaided by other evidence, has no legitimate tendency to establish the deed ; and in point of principle, the instrument can never be received without corroborating proofs.

Let us now see whether there was any other foundation for presuming in favor of the authenticity of this deed. On the authority of *Jackson* v. *Brooks*, (8 *Wend.* 426, *and* 15 *id.* 111,) the evidence of Mr. Sandford in relation to the means by which he acquired a knowledge of the hand-writing of Judge Ten Broeck, and of deputy clerk Vischer, was admissible in relation to this ancient transaction ; and if the jury believed that the certificates of proof and recording upon the back of the deed were in the hand-writing of the judge and clerk, then the fact was sufficiently established that the deed was in existence as early as 1784. But it is here important to notice that the certificates in question are of no force whatever as the official acts of the persons whose names are affixed to them. The land did not lie in Albany county ; and the deed was not proved in such a manner as to warrant either the recording, or the reading of it, in evidence. (*Statutes of* 1820, *p.* 248, § 3.) The certificates can therefore only be regarded as unauthorized and unofficial acts. This doctrine was fully admitted in *Jackson* v. *Laroway*, (3 *John. Cas.* 283,) where proof of a similar cha-

racter had been received. Indeed, all that the plaintiff's counsel asked upon the argument, and all that he had a right to demand, was, that the certificates should be received as evidence of the antiquity of the deed. We have then the fact, or evidence tending to establish the fact, that the deed existed in 1784. But that does not advance a single step beyond the proof which we have before considered. The lapse of sixty years, if there has been no possession, nor any thing else to confirm the deed, has no greater tendency to prove the instrument genuine than the lapse of thirty years, or a single day. Indeed, when nothing has ever been done under the deed, the lapse of time tends to discredit it. Courts have not relaxed the rules of evidence in relation to ancient deeds, because time alone furnishes any presumption in their favor; but because the lapse of time renders it difficult, and sometimes impossible, to give the usual proof of execution.

The plaintiff has then two facts, and only two, on which she can rely for the confirmation of this deed; it comes from the proper custody, and is more than thirty years old. Those facts, whether considered separately or conjointly, are just as consistent with the supposition that the deed is a forgery, as they are with the supposition that it is genuine; and consequently they cannot lay a sufficient foundation for presuming in favor of the due execution of the instrument. There is, I think, no well considered case in this country which affirms the contrary doctrine. In the absence of all the usual proof of execution, nothing can tend to corroborate the deed but acts done under it, or the recognition of its validity by those who have an interest in the other direction. When possession has accompanied the deed, or other unequivocal acts have been done under it, then the longer it has existed, the stronger is the presumption that it is genuine. But if the deed has never been put in use, and especially if the right which it professes to give has been denied by an adverse possession, then the longer the deed has existed the stronger is the presumption that it is not a genuine instrument.

If there was any doubt about the general doctrine that mere

age and proper custody were never sufficient confirmation of a deed, I should think it clearly so in relation to the deeds for military bounty lands, which were deposited with the county clerk under the act of 1794. One of the causes recited in the preamble for passing the act, was, that many frauds had been committed by forging conveyances of those lands. If this deed of Collins may be read in evidence without proof of execution, then every one of the filed deeds may also be read in evidence without proof; for they will all come, as this deed does, from the proper custody; and the fact of filing in 1794 or 1795, when they must have been filed, will prove them to be ancient deeds. Although more than twenty years have elapsed since the thirty years expired which made them ancient deeds, I think it probable that this is the first instance in which it has been proposed to read one of them in evidence without giving direct proof of its execution.

The circumstances on which the instrument was suppposed to be established as an ancient deed were not only insufficient to support it, but there were some facts which tended strongly against the validity of the deed. Allusion has already been made to one of those facts, which is, an adverse possession against the deed for thirty-five years before it was offered in evidence; twenty-three years of which period had elapsed before the suit was commenced. Common experience proves, that if the heirs of McCready had considered the deed valid, they would not have been likely to stand quietly by, and see the land enjoyed by others for so long a period, without asserting their title. And here I may add, that although, as appears by the bill of exceptions, this cause has been tried six several times, this deed was not produced on either of the former trials. The inference is by no means favorable to the supposition that the plaintiff thought the deed valid. There is another fact too important to be omitted. In 1797 Collins conveyed the lot to Hiscock; and that deed was duly acknowledged and recorded. Now if the deed to McCready was genuine, the subsequent deed to Hiscock was a gross fraud on the part of Collins. As the law will not presume fraud, and as the last deed

Sheldon *v.* Dodge.

is proved to be authentic, all presumption in favor of the first deed, arising from its antiquity, is completely overthrown. This doctrine has been asserted by several writers of high authority; and, so far as I have observed, has been denied by none. ( *Gilb. Ev.* 104, *by Lofft,* 1795; *Bull. N. P.* 255; *Peake's Ev.* 164, *by Norris* ; 1 *Stark. Ev.* 382, 3, *ed. of* '42; *Gresl. Eq. Ev.* 124.)

The testimony of King undoubtedly tended in some degree to establish the deed; and I do not intend to deny, that with proper instructions, the question might have been submitted to the jury, whether upon all the evidence in the case they could find in favor of the deed. But the opinion which the judge expressed, that the other circumstances of the case, exclusive of the proof of the grantor's hand-writing, were sufficient to warrant the reading of the deed, was, I think, calculated to mislead the jury in relation to the just weight and importance of those circumstances. If the deed rested upon that foundation alone, it could not stand for a moment.

New trial granted.