By the Court—Bosworth, Ch. J.
The deed of May 10th, 1807, was admitted in evidence, without any proof beyond the production of the paper. There was no other evidence of its prior existence; none as to its custody, or where it came from when produced at the trial, and of course, no evidence that the plaintiffs, or either of them, ever had possession of the premises in question, under it. This decision is, clearly, erroneous. (Wilson v. Betts, 4 Denio, 201; and Clark v. Owens, 18 N. Y. R., 434.)
The questions: when did the plaintiffs’ right of action accrue, and when did the statute of limitations begin to run ? are not free from difficulty.
When Catharine and John Eogal were married, is not stated in the findings of fact, nor is it stated in them when Sophia and Colloon Randall were married.
The findings of fact do not state that Ezekiel Bishop claimed to own in fee. Although they state that he conveyed iu fee to John Ackley, on the 25th of November, 1815, (having bought the premises on the 4th of September, 1815,) they do not state that Ackley was ever in the actual possession of the lot.
They state that Ackley and wife conveyed in fee, on the 8th of November, 1822, to William Nelson, “ who held the same during his life in fee, and after his death his heirs or devisees held said lot, claiming said lot in fee, until the 22d of January, 1850.”
Whether the plaintiffs Catharine and Sophia, were, or whether either of them was married prior to February 8, 1822, the date of the conveyance to Nelson, does not affirmatively appear; nor do I deem it important to ascertain.
The foreclosure and sale in Chancery did not affect their title as heirs of their mother. She had died before that suit was brought, and they were not parties to it.
If the mortgage was satisfied by the sale in Chancery, so that their estate ceased to be incumbered by the mortgage, the statute of limitations, as against an action of ejectment, would not begin to run, until the death of the *113 tenant by the curtesy. If the mortgage is to be treated as satisfied, their legal title is clear, and the statute is no bar, they being at the time of the death of the tenant by the curtesy, under the disability of coverture, and that disability being still continuing. (Jackson v. Johnson, 5 Cow., 74, 94, 102, 103; Same v. Schoonmaker, 4 Id., 390; Casborne v. Scarfe, 1 Atk., 605.)
They had no right of entry, nor any right of possession during the existence of the estate by the curtesy. And during the continuance of that estate, their right as heirs of their mother could not be defeated by a claim of adverse possession commencing while that estate existed, and after the death of their mother, and not founded on title derived from her. Jackson v. Johnson (supra) is directly in point.
Whether an action to redeem is barred, though an action of ejectment may not be, I am not disposed to decide, at present.
If, as between the plaintiffs and the defendant now claiming to own the lot, the mortgage is to be deemed, in equity, a subsisting incumbrance, and he is to be deemed, in equity, an assignee of it, there are many reasons why the right to redeem should not be regarded as barred.
A doctrine or rule, which requires them to redeem, would impose on them the burden of paying off the mortgage, for the benefit of the tenant by the curtesy, while his estate as such tenant in connection with the other mortgaged property, might be worth more than the amount of the incumbrance. It would impose this burden, without conferring on them the right to the estate by the curtesy, or any interest in it. Though they should pay the mortgage debt, still they would have no right of entry or possession until that estate terminated.
And they would be compelled to do this, merely to preserve their legal right to bring ejectment, after the lite estate had ceased.
In 2 Atk., 333, (Anon.,) a redemption was allowed, and what was said, in regard to the excuse of there being a *114 tenant by the curtesy, was not involved in the judgment, and is purely obiter.
Raffety v. King, (1 Keen, 602,) which reviews all the prior decisions, strongly supports the decision of the Judge at Special Term.
Instead of feeling at liberty to overrule his decision on this point, I prefer to not commit myself upon it, and not to pass upon the question, and to leave it open for further argument and consideration, upon a retrial of the action.
That the right to bring ejectment is not barred, if such an action will lie, all agree.
What interest either plaintiff has in the lot, upon the evidence before us, if it be not lost by lapse of time, it is useless to discuss. The case made on a new trial may be entirely different in this regard.
I concur in granting a new trial on the ground first stated, and place my concurrence on that sole ground.
Barbour J.
Hothing can be clearer, to my mind, than that this action cannot be sustained, as a suit in equity, to redeem the land in question from the operation of the mortgage executed by Provoost and wife, in 1809. The defendant is neither a mortgagee in possession, nor is that mortgage a lien upon the premises; nor has he ever stood in the place of the mortgagees, except in regard to the life estate of John D. Provoost, which has terminated. At the time of the institution of the foreclosure suit, in 1815, Bishop, the mortgagee, had an equitable lien upon the land, by his mortgage, to the extent of the life estate therein of John D. Provoost, as tenant by the curtesy, in possession, and, also, of the estate, in fee, belonging to Catharine Provoost, at the date of the execution of the mortgage, if she was then, in fact, vested with such fee; and might, by foreclosure and sale, have reached either or both of those estates. If he had brought his suit against the heirs-at-law of Catharine, his decree would have covered the fee, subject to the life estate; in case he proceeded against the husband alone, he was entitled to a *115 decree for the sale of the life estate only. For some reason,—perhaps, because he was advised that Catharine’s interest in the premises was, merely, an estate for life, and had terminated at her decease, in 1810, or, possibly, under the belief that the sale of the estate of John D. Provoost would be sufficient, together with the other lot, to satisfy his lien,—the mortgagee saw fit to proceed against the latter alone, and to sell his interest as tenant by the curtesy. If he was governed by the last mentioned estimate, his opinion was justified by the result; for the proceeds of the life estate of Provoost iu this lot, and of his fee in the other, were not only sufficient to pay the claim of the mortgagee, but left a considerable balance to be returned to Provoost. By that foreclosure and sale of the life estate, and without selling the estate in fee, the mortgage was fully satisfied and discharged; and the purchaser entered into possession, and, up to the death of John D. Provoost, occupied, with his grantees, the premises, not as mortgagee, but as the absolute owner of the life estate purchased by him at the foreclosure sale, and nothing more; Catharine’s heirs, in the meantime, remaining the owners of the fee, burdened with the life estate, but discharged of the lien of the mortgage. The purchaser at the foreclosure sale, who, in this case, was the mortgagee himself, not only by his purchase, became seized of the life estate which he bought, but, with his grantee, the defendant, became subrogated to all the rights of the mortgagee in that life estate; but only in such life estate. Ho interest in the estate in fee passed to the purchaser at the foreclosure sale, by subrogation or otherwise; for he did not buy that estate, and took none of the rights of the mortgagee therein. In few words, the defendant stands exactly in the shoes of John D. Provoost, whose interest in the premises, and only that, passed to the purchaser by the foreclosure sale. The fact that the Sheriff executed to such purchaser a deed in fee, is, in this regard, wholly unimportant. To decide otherwise, and hold that the grantee in such deed *116 holds adversely to the owner of the fee, would be to establish the principle that any tenant for a term extending beyond twenty years, may, by his own deed, purporting to grant in fee, cut off* the rights of the real owners of that title, which would be monstrous. It seems clear, therefore, that the plaintiff cannot sustain this action as a suit to redeem the fee of the premises from the operation of the mortgage; there being no mortgage lien upon such fee, nor any person, since the decease of the tenant for life, entitled, by subrogation or otherwise, to claim redemption-money, or to remain in possession during the non-payment of moneys secured by mortgage. The interest, by subrogation, of the purchaser and his grantees, as well as their rights as owners of the life estate, terminated upon the death of John D. Provoost; and they never had any interest in the fee.
But this is not, merely, an action in the nature of a suit in equity, to redeem the property from the lien of a mortgage ; it has a double aspect. If the facts warrant it, the plaintiffs may, under the pleadings, be entitled to a judgment, as in an action of ejectment, for the possession of the land itself, or of an undivided portion of it, without condition of payment on their part. Without pausing to consider, therefore, whether the defendant in this case may avail himself of an error in a judgment awarding to him several thousand dollars, as redemption-money, to which he is not entitled, or the question as to whether the Judge had jurisdiction, at Special Term, to render a judgment at all, after a trial, before him without a Jury, had shown, (as I think it did,) that the plaintiffs were not entitled to any relief in equity, I pass to the examination of the further questions involved in the suit, and presented upon this appeal.
Assuming that the plaintiffs are the owners in fee, as the heirs-at-law of their mother, there was no possession by Bishop or his grantees, prior to the death of John D. Provoost, adverse to the title of such owners ; the estate by the curtesy having been carved out of, and being held *117 under and in subordination to the fee. They were, simply, tenants, though for Provoost’s life, and without payment of rent, of the owners in fee; and, as such, were liable to them for waste, &c. If, therefore, the plaintiffs are such owners in fee, they became entitled to the immediate possession of the premises, upon the death of Provoost ; and might then, or may at any timé within twenty years after, but not before that period, maintain their action, in the nature of an action in ejectment, for the recovery of such possession.
But, to enable the plaintiffs to succeed, it is absolutely necessary for them to show that Catharine Provoost died seized of the premises, or some portion of them, in fee. Her father’s will given in evidence, did not establish this; for the devise was in general terms, and contained no words of limitation or inheritance, and, therefore, passed only a life estate. (Harvey v. Olmsted, 1 Comst., 483.) Besides, even if the devise had carried a fee, the fee of this particular lot would not have vested in Catharine, to the exclusion of her sisters, by such devise alone, and without a severance by the three sisters of the property given to them, respectively, and the setting apart of this parcel to Catharine. It was, therefore, incumbent upon the plaintiffs, in order to entitle them to recover more than the share falling to Catharine as one of the seven heirs-at-law of her father, to show, that, by some act, subsequent to the death of her devisor, Catharine’s life estate became changed to an estate in fee in the lot in question ; and this they attempted to do by the production of the alleged deed of 1805.
This deed states, upon its face, that it is made by Margaret, the widow of Peter Colyer, and Charles Colyer, Jacobus Colyer, Peter Colyer, Jane Van Cott, Eve Provoost, Margaret Tiebout, and Catharine Provoost, (described in the deed to be the children, devisees, and heirs-at-law of Peter Colyer, deceased,) with their respective wives and husbands ; and, after setting forth the will of Peter Colyer, and reciting the fact that doubts have arisen whether the *118 words contained in the will are sufficient to pass estates in fee to Jacobus, Eve, Margaret and Catharine, purports to grant and convey to each of the parties to such deed, from all the others, the lands devised to each of them by the will; one of the two lots in Essex street being designated and so conveyed to Margaret Tiebout, and the other, being the lot in controversy, to Catharine Provoost. But such deed is not signed either by Jane Van Cott or Margaret Tiebout, two of the alleged children of Peter Colyer, or their husbands; and purports to be signed only by Margaret Colyer, the widow, and Charles Colyer, Jacobus Colyer, Peter Colyer, Eve Provoost, and Catharine Provoost, five of the seven heirs-at-law, with their wives and husbands, although other seals are attached to the instrument, opposite blanks. The name of Jane Colyer, too, (stated in the body of the deed to be the wife of Jacobus,) appears twice among the signatures,.; one purporting to have been written by her, and the other attested by a mark or cross; and the three subscribing witnesses simply attest that it was “ sealed and delivered in presence of” themselves, without stating whether all the persons whose signatures are upon the paper, so sealed and delivered it, or only a part of them. Some of the persons, too, whose names appear among the signatures, signed in no other way than as marksmen ; and there is no evidence upon the face of the paper that such marks were made by those persons. Fo evidence, beyond what may be inferred from the production of the paper by the plaintiffs, themselves, was given touching its custody, at any time between the date of its alleged execution and the trial of the action; and it does not appear to have been either acknowledged or recorded.
It is fully* settled, with us, that an instrument purporting to have been executed more than thirty years before it is offered in evidence, is not entitled to be read as an ancient deed, upon presentation, merely, and without further proof of its authenticity. The bare efflux of time is not sufficient. Proof that the paner offered has for that period, ‘ *119 been in the custody of the party who, if genuine, would be the proper person to hold it, is essential. ETor is that enough. Evidence of possession under the deed, during the thirty years, or some other corroborative evidence of its authenticity, is also necessary. (Jackson v. Luquere, 5 Cow., 221; Jackson v. Lamb, 7 Id., 431; Hewlet v. Cock, 7 Wend., 371; Wilson v. Betts, 4 Denio, 201.) In the case last cited, proof that the paper offered had been in the possession of the proper custodian for sixty years was held insufficient, in the absence of further corroborative evidence. And, beyond all this, it is essential to the admission of the instrument as evidence, that it be wholly free from any just grounds of suspicion. (1 Greenl. Ev., § 21 and note 4.)
At the time this deed was read in evidence, none of these prerequisite facts had been proven. The production of the paper by the plaintiffs does not establish a presumption that it had been in their custody or that of their ancestor, from the day of its date; for each of the parties to it, all being grantees, was as well entitled to its possession as was Catharine Provoost, and, for aught that appeared, some one of them had held it until the day of the trial, notwithstanding they were her grantors. It is true that, after the deed was read in evidence, an attempt was made to prove that Catharine Provoost was in possession of the lot in controversy at some time previous to her death in 1810; and the Judge has found, as a fact, that John D. Provoost, and Catharine, his wife, were in the actual possession of the premises before and at the time of the execution by them of their mortgage to Bishop, in 1809.
Upon a careful consideration of the evidence embodied in the printed case, I find myself unable to concur with the learned and able Judge who tried the cause, in regard to this question of fact. There is no evidence whatever in the case tending to prove possession, to any extent, in Provoost or his wife, aside from what is contained in the testimony of Catharine Fogal; and that, it seems to me, *120 is insufficient to establish such possession. She testifies, after the mists of more than half a century have gathered around her memory, that she played, when a child less than ten years old, not upon the one lot in question, but upon two lots in Essex street; being, probably, the two lots devised by Peter Colyer with another lot in Eagle street, to his three daughters, Eve, Margaret, and Catharine. If it may be inferred that the witness so played there by permission or the direction of her mother, therefore, it is quite as reasonable to suppose that the mother exercised this right by virtue of her claim to all three of the lots, and her ownership in freehold of one of them, not, as yet, then set apart to her or severed, as it would be to assume that she had or claimed sole possession of the one in question; for,' until partitioned, each of the sisters was equitably entitled to the possession, jointly with the other two, of either or all of the three parcels. The theory suggested will also apply to the alleged use of the lot stated by the witness to have been granted by her mother (who was incapable of making a grant without joining her husband) to Mrs. Tiebout, and the alleged possession of the latter; a possession, by the way, thus attempted to be proved, simply by the use of the legal term itself, without showing in what manner or to what extent it was had; possession, too, of a vacant lot, upon which there was no house, and where, notwithstanding such possession, the children of Mrs. Provoost were sent to play. But, be that as it may, I think the testimony of Mrs. Eogal, (as well as that of Colloon-Randall,) was inadmissible under the rule as it stood when such evidence was given. The case of Hasbrouck v. Vandervoort, (5 Seld., 153,) seems to me to be conclusive upon that point.
Besides this, it is quite apparent that the instrument is incomplete as a deed, and could never have been delivered to any of the parties, except for* the purpose of being executed by them. The object and design of all the parties appears, clearly, to have been, not merely to *121 carry into effect the intention of Peter Colyer, as expressed in his will, but to go beyond that, and grant by and on the part of all the heirs-at-law, a particular lot, in severalty, to each of the three daughter's, in fee, in lieu of the life estate which she had, by the will, in an uncertain one of three lots, and, also, to grant and release to each of the other devisees the lands devised to them, respectively, as well as to covenant, as they did, with each other, that they would, severally, abide by the will, according to the construction thus given to it, and carry it into effect. The great object of each of the parties to the proposed deed, therefore, was to perfect and quiet the title to the lands devised to him; and such grant and release to himself constituted the consideration for his execution of the deed. This, then, being the motive of the parties, it is more reasonable to suppose that the deed was stopped in transitu by some of them, in its passage for execution, than to believe it was finally delivered to any of the parties, as a complete deed, before it was executed by all the grantees.
There is still another reason which ought, of itself, to have precluded the admission of the instrument, even if its execution by all the parties whose signatures appear upon it, had been fully proved;—that is, it did not prove, nor tend to prove, any fact stated in the complaint. Certainly, the title claimed by the plaintiffs to have been vested in their ancestor by a deed of a certain description, executed by fifteen persons named in the complaint, and in no other manner, cannot legally be proven by the pro-1 duction of a deed signed by eleven only of those persons. I am of opinion, therefore, that the deed was improperly permitted to be read, and that there is no evidence in the case tending to establish the fact that Catharine Provoost was ever seized or possessed of a fee in the premises, except as one of the seven heirs-at-law of her father.
Conceding, however, for a moment, that all of the persons named in the deed of 1805, as parties to it, were *122 heirs of Peter Colyer, and his only heirs-at-law,—that the deed was duly delivered to Catharine Provoost by those persons whose signatures appear upon it,— and that it was properly received in evidence;—still, the judgment cannot be sustained, even upon the theory of the Judge himself. For, in that case, the two heirs-at-law who failed to sign the deed are the owners of two-sevenths of the premises. So, too, as to Eve Colyer, a married woman, who signed the deed, but failed to acknowledge it in the manner required by the statute then in force, so as to render it effective. (1 Webster’s L. N. Y., 478.) Nothing passed by her deed, and she remains the owner of another seventh. Surely, then, the plaintiffs who have obtained the judgment are not entitled to the possession of that portion of the premises which is represented by those three-sevenths, even though it may clearly appear that the defendant has no right whatever to such possession. They must rest upon the strength of their own title, and cannot avail themselves of the weakness of that of their adversary. I think, too, that the learned Judge erred in dismissing the complaint, as to a part of the plaintiffs, upon the ground that they were barred by the statute of limitations. The action was brought within twenty years after the death of the tenant for life; when the right of the plaintiffs to the possession accrued. For these reasons, I am of opinion that the judgment cannot be sustained upon any supposable theory, and that it should, therefore, be reversed, with costs, and a new trial granted.